David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*AZUSA AYCOCK*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| AZUSA AYCOCK,<br><br>　　　　　Plaintiff,<br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>　　　　　Defendant. | Civil Action No.: _____<br><br>**COMPLAINT** |

For this Complaint, the Plaintiff, AZUSA AYCOCK, by undersigned counsel, states as follows:

## **JURISDICTION**

1.　　This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act

(DFA), the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601, *et seq.*, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et seq.*

2. This action is specifically filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, *et seq.*, of Regulation X.

3. Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

4. Supplemental jurisdiction exists (as applicable) pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's RESPA/TILA claims pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

## **PARTIES**

6. The Plaintiff, AZUSA AYCOCK ("Plaintiff" or "Mrs. Aycock"), is an adult individual residing in Las Vegas, Nevada.

7. Defendant OCWEN LOAN SERVICING, LLC ("Defendant" or "OCWEN"), was doing business in the State of Nevada at all times herein.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

8. On or about 8/30/2010, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq*. Plaintiff's case was assigned Case Number 10-26409-mkn (the "Chapter 13" or "Bankruptcy").

9. On June 8, 2015, the Plaintiff's Chapter 13 Plan was confirmed (the "Confirmed Chapter 13 Plan" or "Confirmation Order").

10. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 plan and after completing all payments under the Confirmation Order received a discharge on 11/23/2015 (the "Discharge").

11. At the time the Bankruptcy was filed, Plaintiff was the owner of real property located at and commonly known as 5864 Rothbury Ave, Las Vegas, NV 89141 (the "Property") which disclosed in the Bankruptcy schedules.

12. Plaintiff, at all times relevant, has maintained and currently maintains the Property as Plaintiff's primary, principal residence.

13. Defendant is (or was) the servicer of a note (the "Note") and a deed of trust (the "DOT") on the Property that allegedly secures the Note and DOT (collectively referred to hereinafter as the "Loan").

14. Defendant was transferred servicing rights in the Loan and has been the servicer of the Loan since at least October 11, 2011.

15. At all times herein, the Plaintiff's chief concern was to ensure that after repaying debts in Chapter 13 for several years and remaining current on the Loan – to the extent Defendant furnished information to national credit bureaus about the Loan – that Defendant's credit data reporting about the Loan was accurately reflected in the Plaintiff's credit file to ensure a true "fresh start".

16. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

17. Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

18. The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

19. Defendant is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. §1026.41(e)(4), nor does Defendant qualify for the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.700.

20. Plaintiff is asserting claims for relief against Defendant for breaches of specific rules under Regulation X and Regulation Z, as set forth, *infra*.

21. Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

### SPECIFIC FACTS GIVING RISE TO THIS ACTION

22. On or about 5/03/2017, Plaintiff sent correspondence to Defendant captioned or otherwise titled "Request for Information Pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2); Request for Payoff Statement Pursuant to 12 C.F.R. § 1026.36(c)(3)" (the "RFI") via certified mail, wherein (among other items) the Plaintiff requested a summary date the Defendant furnished about the Loan to any and all Credit Reporting Agencies, including but not limited to, Experian, Equifax, Transunion, and CBC Innovis ("the CRAs").

23. In part, the Plaintiff's RFI requested a month by month e-OSCAR report relating to the Defendant's servicing of the Loan from the date the Bankruptcy was filed to present (the "Loan Reporting Credit Data Request" or "LRCDR").

24. Defendant received the RFI within a week of mailing.

25. As of the date of this complaint, Defendant failed to provide a proper, substantive response to the LRCDR as requested in the RFI or provide a proper objection to their obligation to provide such information.

26. While Ocwen did send a written response dated June 8, 2017, that response failed to address the Plaintiff's request for the LRCDR and just stated:

> Please note Credit Reporting Agencies suppress all the credit reporting and there is no credit reporting or account history updated while an account has an active Chapter 13 Bankruptcy status on the loan. Further, upon issuance of a discharge order by the Bankruptcy court, credit reporting would be made on the loan according to the updated contractual status of the loan after the issuance of the discharge order.
>
> We are obligated to report true and accurate information to the credit bureaus and therefore the credit reporting cannot be changed. According to our records, the loan is reported accordingly the bankruptcy status and no correction processed. Therefore, we are unable to provide any AUD on the loan.

27. However, Ocwen did not provide any responsive information to the LRCDR after the discharge date as requested in the RFI. Moreover, the assertion by Ocwen that the CRAs "suppress all the credit reporting…while an account has an active Chapter 13 Bankruptcy status" does not allow Ocwen to shirk its response to the LRCDR to provide the Plaintiff with the data it was in fact furnished to Ocwen (regardless of how the CRAs treated or suppressed that data).

28. On or about 12/05/2017, as a direct result of Defendant's failure to provide the information requested in response to the LRCDR, Plaintiff sent additional correspondence to Defendant captioned or otherwise titled "Notice of Error pursuant to 12 C.F.R. § 1024.35(b)(11); and <u>Second</u> Request for Information pursuant to 12 C.F.R. §1024.36" ("NOE #1") via certified mail again requesting Defendant provide a response to the LRCDR.

29. In NOE #1 the Plaintiff explained the importance of the LRCDR stating (among other things):

> Your "response" was totally non-responsive to my credit reporting requests related to your servicing of my loan. The entire point of

>my request was to obtain the information you were providing to the credit bureaus after I filed my Chapter 13 bankruptcy to present, because the credit bureaus are suppressing the positive information you reported. **I therefore need this information from <u>you</u>** – since obviously know how you reported my mortgage while you serviced my loan – **so I can send a letter to the credit bureaus asking them to report the information which they are automatically suppressing due to <u>their</u> policies**. (**emphasis in original**)

30. Defendant received NOE #1 within a week of mailing.

31. As of the date of this complaint, Defendant again failed to respond to the LRCDR as requested in NOE #1 resulting in this suit.

32. Without the information requested by and through the LRCDR, the Plaintiff remains at a total informational disadvantage and is unable to conduct a complete review as to the accuracy and completeness of the Plaintiff's credit "file" as that term is defined pursuant to 15 U.S.C. §1681a(g).

33. Defendant reported credit data via "e-Oscar" or other electronic means to the CRAs in the ordinary course of its business of servicing the Loan for the time periods responsive to the LRCDR.

34. Defendant is in the best position to know with certainty what data it furnished to CRAs regarding the Loan.

35. Defendant therefore was at all times herein the most reliable source of data furnished to the CRAs and under a statutory obligation to provide the Plaintiff with a complete response to the LRCDR, since the LRCDR "relat[ed] to the servicing of" Plaintiff's Loan. See 12 C.F.R. §1024.35(b)(11).

36. Defendant retains and can reasonably and readily access information furnished on the Loan to CRAs, which would be responsive to the LRCDR.

37. Defendant could have (if it chose) provided the Plaintiff with responsive data to the LRCDR.

38. Upon information and belief, the CRAs utilize their own internal policies and procedures regarding data processing, which may result in data furnished by servicers (like the Defendant) to be "suppressed".

39. "Suppressed" data would not be visible to consumers (like the Plaintiff) requesting a complete credit file pursuant to 15 U.S.C. §1681g(a) from the CRAs.

40. The Plaintiff would be unable to request the CRAs update the Plaintiff's credit files as needed without knowing what data the CRAs may (or may not have) suppressed.

41. A complete response to the LRCDR would accordingly extract the Plaintiff from the current informational disadvantage and put the Plaintiff in a position to conduct a complete review of the Plaintiff's credit files to ensure the benefit of the "fresh start" and Defendant's positive credit data reporting are reflected in the Plaintiff's credit files maintained with the CRAs.

42. Accordingly, without the benefit of a complete response to the LRCDR, consumers like the Plaintiff are simply unable to determine whether their

credit file is "accurate" and "complete" as those terms are meant pursuant to 15 U.S.C. §1681i(a)(5)(A); and/or whether the CRAs followed "reasonable procedures to assure maximum possible accuracy" of the Defendant's furnished data regarding the Loan as required pursuant to 15 U.S.C. §1681e(b).

43. Through the LRCDR, Defendant's responsive data would permit the Plaintiff to do a "side by side" comparison of 1) the Plaintiff's credit file and 2) the LRCDR responsive data. This would allow the Plaintiff to ensure that the data furnished about the Loan by the Defendant is in sync with the Plaintiff's consumer files (upon a request to the CRAs).

44. Stated differently, without a response to the LRCDR, the Plaintiff simply is not is a position to know whether the Plaintiff's consumer file is reflective of all the positive data being furnished by the Defendant or if erroneous adverse credit information is being reported, to allow the Plaintiff to inform the CRAs of such errors and maintain a complete and accurate credit file.

45. Defendant's failure to provide the LRCDR in response to the RFI, NOE#1 resulted in numerous servicing errors of the Loan by Defendant engaging in the following acts:

- Failing to supply requested information in a timely manner that would enable Plaintiff to ensure the Defendant's data furnishing on the Loan was consistent with the timely Loan payments;

- Failing to properly respond to or otherwise correct errors in the servicing of the Loan of which Plaintiff has put Defendant on notice; and

- Improperly concealing information from the Plaintiff relating to the servicing of the Loan, which the Defendant furnished to national credit reporting agencies that are the subject of such noticed errors.

46. Defendant's improper actions have caused Plaintiff to incur a number of unwarranted costs and fees in an effort to obtain transparency about the routine servicing of the Loan vis-à-vis Defendant's credit reporting on the Loan.

47. Plaintiff at all times relevant, has merely wanted to pay (and has paid) ongoing monthly mortgage payments in fulfillment of the Loan obligations and to continue to rehabilitate the Plaintiff's credit following Bankruptcy and reap the full benefits of the "fresh start" to which Plaintiff is entitled following Bankruptcy.

48. All attempts and requests for the LRCDR have fallen on deaf ears and any response Defendant has supplied has been dismissive, vague, or otherwise unhelpful and non-responsive in dereliction of its statutory duties discussed herein.

49. Defendant's improper actions have caused Plaintiff continued costs and damages. Indeed, the Plaintiff remains unable to conduct a complete credit file review and incurred significant costs in time, mailing and travel expenditures to resolve Defendant's errors.

50. Defendant's wrongful and willful actions have caused Plaintiff to suffer emotional distress driven by the fear that the Plaintiff will never be in a position to obtain a complete and transparent credit file, which has resulted in anxiety, fear, frustration, anger, feelings of helplessness and intimidation, rage and

other emotional distress as well as out of pocket expenses to, among other things, paying for mailing costs, stamps, paper, ink, gas, and lost time to prepare, mail and review NOE #1 and NOE #2.

### COUNTS 1 THROUGH 2: VIOLATIONS OF 12 C.F.R. § 1024.36(d)
### (Failure to respond in a timely manner to a request for information issued pursuant to 12 C.F.R. § 1024.36)

51. Plaintiff restates and incorporates herein all of the statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

52. 12 C.F.R. §1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

53. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. §1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

54. 12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

> [A] servicer must respond to an information request by either:
>
> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

      (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance

55. Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

56. Plaintiff sent an RFI to Defendant on or about 5/03/2017 and 12/05/2017. Plaintiff sent each RFI to Defendant at its self-designated address for the receipt of such correspondence pursuant to 12 C.F.R. § 1024.36(b).

57. The RFI (and each of them), in part, constituted a request for information pursuant to 12 C.F.R. §1024.36(a) as each RFI requested information "with respect to the borrower's mortgage loan."

58. Defendant received each of the RFIs within a week of the above mailing dates.

59. Pursuant to 12 C.F.R. §1024.36(d)(2)(i)(B), Defendant was required to provide written correspondence to Plaintiff in response to Plaintiff's RFIs "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request", as contained in the RFI, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1) (the "RFI Response Deadlines").

60. The Plaintiff never received any written correspondence from Defendant containing a proper, substantive response to the LRCDR or otherwise containing a proper, valid objection as to why Defendant was not required to so respond to the LRCDR by the RFI Response Deadlines and Defendant therefore failed to comply with the requirements of 12 C.F.R. §1024.36(d)(1) by the RFI Response Deadlines.

61. Defendant's actions, in failing to provide proper written correspondence to Plaintiff in response to Plaintiff's RFIs for the LRCDR before the RFI Response Deadlines, constituted a willful violation of 12 C.F.R. §1024.36(d).

62. Defendant's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

63. As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT 3: VIOLATIONS OF 12 C.F.R. § 1024.35(e)
### (Failure to properly respond to a notice of error issued pursuant to 12 C.F.R. §1024.35)

64. Plaintiff restates and incorporates herein all of the statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

65. 12 C.F.R. § 1024.35(a) provides, in relevant part, that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

66. 12 C.F.R. 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

67. Further, 12 C.F.R. § 1024.35(e)(3)(i) provides, in relevant part:

> A servicer must comply with the requirements of paragraph (e)(1) of this section:
> (A)  Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.
> (B)  Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.
> (C)  For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

68. Plaintiff sent NOE #1 to Defendant on or about 12/05/2017 to the address self-designated by Defendant for the receipt of such correspondence pursuant to 12 C.F.R. § 1024.35(c).

69. NOE #1 constituted a notice of error as such term is defined in 12 C.F.R. § 1024.35(a).

70. Defendant received NOE #1 within a week of mailing NOE #1.

71. As of the date of this complaint, Defendant failed to provide responsive information to the LRCDR even though the Defendant was a notice of its failure to provide same through Plaintiff's NOE #1.

72. The failure to provide a response to the LRCDR addressed in NOE #1 resulted in the errors addressed in NOE #1 remaining uncorrected. Further,

Defendant did not communicate the effective date it made any corrections (which would have been remedied in part by providing a response to the LRCDR) thereby failing to comply with 12 C.F.R. 1024.35(e)(1)(i)(A).

73. Further, at no point in time in did the Defendant provide a response to NOE #1 explaining that in fact that no error(s) occurred with an explanation as to the reason(s) for such determination(s) after performing a reasonable investigation into such pursuant to 12 C.F.R. 1024.35(e)(1)(i)(B).

74. Defendant's actions, in failing to provide a proper response to the LRCDR as expressed in NOE #1, and previously RFI #1, failed to meet the express, explicit requirements of either 12 C.F.R. 1024.35(e)(1)(i)(A) or 12 C.F.R. 1024.35(e)(1)(i)(B).

75. Defendant's actions, in failing to provide a response to NOE #1 that meets the explicit and express requirements of 12 C.F.R. § 1024.35(e), constitute willful violations of 12 C.F.R. § 1024.35(e).

76. Defendant's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights. Indeed, as of the date of this complaint consumers have filed over 26,000 complaints against Ocwen for a wide range of mortgage servicing violations.

77. As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that judgment be entered against the Defendants awarding the Plaintiff:

1. Actual damages pursuant to 12 U.S.C. §2605(f)(1);

2. Statutory damages pursuant to 12 U.S.C. §2605(f)(2) for each and every violation discussed above;

3. Costs of litigation and reasonable attorney's fees pursuant to 12 U.S.C. §2605(f)(3); and

4. Any other legal or equitable relief that the court deems appropriate.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: April 20, 2018

Respectfully submitted,

By /s/ David H. Krieger, Esq.

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*AZUSA AYCOCK*